# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| PRESSLEY RIDGE SCHOOL FOR THE DEAF, | : | Case No. 3:17-cv-00166 |
| | : | |
| | : | District Judge Thomas M. Rose |
| Plaintiff, | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| GRAHAM LOCAL SCHOOL DISTRICT, BOARD OF EDUCATION, | : | |
| | : | |
| | : | |
| Defendant. | : | |

---

## REPORT AND RECOMMENDATIONS[1]

---

## I. Introduction

Plaintiff Pressley Ridge School for the Deaf provides special education and other services to students with special needs. It is located in Pittsburgh, Pennsylvania. The Graham Local School District is a public school district in Champaign County, Ohio.

Invoking this Court's diversity jurisdiction, Pressley Ridge claims that Defendant Graham Local School District Board of Education (the Board or Defendant) breached a valid, enforceable contract by failing to pay Pressley Ridge for educational, residential, and related services it provided to a special-needs student, J.D., during the 2016-2017 extended school year. The parties have filed cross motions for judgment on the pleadings under Fed. R. Civ. P. 12(c), debating (in part) whether an enforceable contract existed between them

---

[1]Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

during the 2016-2017 extended school year.

## II.    The Pleadings and Attached Documents

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true...." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008).  Doing so reveals the following.

### A.    Pressley Ridge's First Amended Complaint

Pressley Ridge's Amended Complaint and attached documents describe events during two extended school years.  In the first school year—2015-2016—all went well between the parties; in the second—2016-2017—things turned sour.

In late May 2015, J.D. and his parents lived within the boundaries of the Graham Local School District.  The parties acknowledge that J.D. is a "child with a disability" as defined by the Individual with Disabilities in Education Act (IDEA), 20 U.S.C. §1401(3).  (Doc. #21*, PageID* #185, ¶8; Doc. #22, *PageID* #216, ¶6).  Pressley Ridge alleges that J.D.'s disability required one-on-one attention during all waking hours.

During the 2015-2016 extended school year, J.D. attended Pressley Ridge where he received educational, residential, and related services.  His placement at Pressley Ridge was the result of a settlement agreement between J.D.'s parents and the Board that identified Pressley Ridge as the "least restrictive environment" for J.D. under the IDEA.  (Doc. #21, *PageID* #186 and Exhibit B).[2]

---

[2] Exhibits A-C, E, and I to the Complaint and Amended Complaint have been sealed by Court Order.  (Doc. #s 5, 6).

In furtherance of J.D.'s placement at Pressley Ridge, the Board and Pressley Ridge entered into a written, signed "Agreement for Provision of Special Education and Certain Related Services." *Id.* at 186, Exh. D. This Agreement covered J.D.'s placement at Pressley Ridge during the 2015-2016 extended school year and spelled out the costs of educational and residential services and other matters. *Id.* at Exh. D. Pressley Ridge notes, "Defendant paid for all educational and related services provided by Pressley Ridge on Defendant's behalf to J.D. pursuant to J.D. IEP [Individualized Educational Program] and pursuant to the agreement between Pressley Ridge and Defendant for the extended school year 2015-2016." *Id.* at 187, ¶22.

On August 3, 2016, an annual review of J.D.'s IEP was conducted to plan for the next—2016-2017—school year. During the review, J.D.'s parents "raised concerns regarding a then-contemplated mission trip to Nicaragua, thus notifying Defendant of the upcoming trip and of their leaving the country." *Id.* at 187 (citing Exh. C). The Amended Complaint does not specifically state whether J.D.'s parents went on the mission trip during any part of the 2016-2017 extended school.

It is worth pausing to note that under the IDEA, "J.D. is required to receive a 'free and appropriate public education' ('FAPE') pursuant to a placement determined by an 'IEP team' and reflected in a valid individualized education Program…." *Id.*, *PageID* #185, ¶10; *see* Doc. #22, *PageID* #216, ¶8; *see also F.H. ex rel. Hall v. Memphis City Schools*, 764 F.3d 638, 641 (6th Cir. 2014) ("The IDEA guarantees these [disabled] children a Free Appropriate Public Education … in conformity with the IEP."). "Crafted by a child's 'IEP Team'—a group of school officials, teachers, and parents—the IEP spells out a personalized

plan to meet all of the child's 'educational needs.'" *Fry v. Napoleon Community Schools*, 137 S.Ct. 743, 749 (2017) (citations omitted).

Returning to the Amended Complaint, Pressley Ridge's key allegations place its breach-of-contract claim in the limelight:

29.    On or about August 3, 2016, J.D.'s IEP was formalized by and agreed to by the entire IEP Team.

30.    According to the IEP, [t]he IEP team agreed and determined to continue J.D.'s placement at Pressley Ridge for the 2016-2017 extended school year.

31.    Defendant supported J.D.'s continued placement at Pressley Ridge for the extended 2016-2017 school year as part of J.D.'s IEP team as J.D.'s district of residence.

32.    The IEP presently in effect for J.D. reflects a continuation of J.D.'s prior placement with Pressley Ridge.

33.    Following the August 3, 2016 IEP Team meeting, Pressley Ridge engaged in correspondence with Defendant regarding the re-enrollment of J.D. for the upcoming extended school year and annual costs.

34.    As a result of the IEP Team meeting, the approval of the IEP, and as a result of these correspondences, Defendant entered into an agreement with Pressley Ridge for the 2016-2017 school year (the "Agreement").

35.    Pursuant to the Agreement, Pressley Ridge began providing educational and residential services to J.D. on behalf of Defendant as requested and required by Defendant and pursuant to J.D.'s IEP.

36.    In recognition of the execution of the joint IEP, Pressley Ridge sent written confirmation of the Agreement to Defendant in September, 2016 to carry out the terms of the IEP.

37.    In accordance with the Agreement, Defendant is required to remit fees for educational services either in full in advance, or in three equal installments during the course of the year.

38.    In accordance with the Agreement, Defendant is required to remit fees for residential and related services at least monthly.

*Id*. at 187-88 (citations omitted).

The parties' present dispute began rumbling in the fall of 2016 when Defendant did not timely pay for educational and residential services. Pressley Ridge began sending invoices to Defendant in August 2016, including an invoice for educational services and monthly invoices for residential services for the 2016-2017 extended school year. When Defendant did not timely pay for those services, *id*. at 189, ¶s 40-41, Pressley Ridge sent correspondence to Defendant in late November 2016 regarding the outstanding balance. "After correspondence from Pressley Ridge regarding Defendant's outstanding balance, on … November 28, 2016, Defendant remitted payment in the amount of $77,910.45 to Pressley Ridge for services provided by Pressley Ridge pursuant to the 2016-2017 Agreement for the period August 3, 2016 through and including September 30, 2016." *Id*. at ¶42 (citing Exh. F, Popovich affidavit). Yet, "Defendant failed to remit any other or further payments to Pressley Ridge pursuant to the Agreement." *Id*. at ¶43 (citing Exh. F, Popovich affidavit).

Defendant's explanation for its non-payment began to emerge in a letter to Pressley Ridge in February 2017. This letter is referred to in, and attached to, the Amended Complaint. In the letter, Defendant's Superintendent explained that the Board "no longer believes it has an obligation to provide a free education to [J.D.] under the presently existing circumstances as neither he nor his parents are residents of the Graham Local School District." *Id*., Exh. G, *PageID* #204. The Superintendent stated that J.D.'s parents had moved out of the Graham Local School District on or about September 22, 2016. The

Amended Complaint suggests, "Upon information and belief, … in contemplation of their disclosed mission trip, [J.D.'s parents] executed a Grandparent Power of Attorney on September 22, 2016 with J.D.'s grandmother…, pursuant to O.R.C. § 3109.52 *et seq*." *Id.* at 190, ¶48. The Board believed the power or attorney was void and consequently failed to establish the residency of J.D.'s parents in the Graham Local School District.

The Superintendent's letter also advised Pressley Ridge that the Board had filed declaratory-judgment action in the Champaign County Court of Common Pleas, Juvenile Division, contesting the validity of the power of attorney. The Superintendent does not state in the letter whether Juvenile Court found the grandparent power of attorney to be void or valid. The record in the instant case does not presently contain further information about the status of the case in Juvenile Court.[3]

In response to the Board's act of filing a declaratory-judgment case in state court, J.D.'s parents and grandmother sought a "stay-put" Order from the Ohio Department of Education. In late March 2017, a state hearing officer issued a stay-put order requiring J.D.'s placement to remain at Pressley Ridge. *Id.*, Exh. I. at *PageID* #110. The stay-put order noted, "The parents' move out of the country … has placed the question of financial responsibility at issue." *Id.* But, because the Juvenile Court—not the hearing officer—had jurisdiction to resolve the validity of the power of attorney concerning J.D.'s care, the

_____

[3] J.D.'s parents previously filed a related case in this Court seeking injunctive relief. That previous case was voluntarily dismissed after Judge Rose declined to issue a temporary restraining order in July 2017. Judge Rose wrote, in part, "if the Juvenile Court finds that J.D. remains a resident of the School District, the School District will be required to maintain J.D.'s placement at Pressley Ridge until the dispute regarding what constitutes a FAPE for him is resolved." *J.D. v. Graham Local School Dist. Bd. of Educ.*, 3:17cv00143, 2017 WL 1807626, at *4 (S.D. Ohio, July 5, 2017).

hearing officer declined to resolve the issue of financial responsibility for J.D.'s placement and care at Pressley Ridge.  *Id*. at 110-11.

The Amended Complaint asserts that between September 22, 2016 and February 21, 2017, Defendant "continued to accept Pressley Ridge's provision of educational and residential services to J.D. pursuant to the Agreement, and pursuant to J.D.'s IEP."  *Id*. at ¶50.  Defendant also continued to discuss with Pressley Ridge "the provision of services to J.D. pursuant to J.D.'s IEP Team as a member of the IEP Team as J.D.'s district of residence."  *Id*. at ¶53.  During that time period, Defendant also continued to correspond with Pressley Ridge about J.D.'s progress in meeting his IEP goals.  And, "Between September 22, 2016 and at least February 21, 2017, Defendant continued to correspond with Pressley Ridge and government agencies regarding Defendant's continued obligation to bear the cost of J.D.'s placement at Pressley Ridge."  *Id*. at ¶55 (citation omitted)

"As a result of Defendant's failure to remit payment to Pressley Ridge pursuant to the Agreement, Pressley Ridge has been forced to release J.D. to the care of [his mother and maternal grandmother]."  *Id*. at 192, ¶68.  Pressley Ridge released J.D. in approximately May 2017.  *Id*. at ¶64.

Pressley Ridge claims that Defendant breached the parties' Agreement by not paying Pressley Ridge for services it provided to J.D. from at least October 1, 2016 to present. Pressley Ridge also advances claims of collection on account and unjust enrichment. Pressley Ridge seeks an award of damages in excess of $208,856.73.

Pressley Ridge's Amended Complaint does not seek recovery under the IDEA.

## B.     Defendant's Answer

The nitty-gritty of Defendant's admissions and denials is seen in the following.

Defendant "admits that, pursuant to Ohio Administrative Code 3301-51-01(A), a child's school district of residence is responsible for making a free appropriate public education available to every eligible child in its jurisdiction and to pay for the cost of providing that education."  (Doc. #22, *PageID* #216, ¶10).

J.D. received educational and related services at Pressley Ridge from September 2, 2015 through May 12, 2017.  The Board entered into a written agreement with Pressley Ridge for the 2015-2016 school year.  (Doc. #22, *PageID*# 217, ¶s 17-18).  The Board "paid for all educational and related services provided to J.D. during the period of September 2, 2015 through September 30, 2016." *Id*. at ¶19.[4]

Pressley Ridge participated in J.D.'s IEP review on August 3, 2016 as a member of his IEP Team.  Defendant admits that it participated in the IEP as J.D.'s school district of residence and as a required member of J.D.'s IEP Team. *Id*., *PageID* #218, ¶22.  On August 3, 2016, "Defendant supported J.D.'s continued placement at Pressley Ridge." *Id*. at ¶26. "Defendant admits that or about August 3, 2016, J.D.'s IEP team agreed to continue his placement at Pressley Ridge." *Id*. at ¶27.

Defendant denies that after the August 3, 2016 meeting, Pressley Ridge corresponded with it regarding J.D.'s re-enrollment for the upcoming 2016-2017 extended school year. *Id*., *PageID* #219, ¶28.  Defendant denies that it entered into an agreement—referred to by

---

[4] Citations in this section are to Graham Local's Answer without the corresponding citations to the Amended Complaint.

the Amended Complaint as "the Agreement"—with Pressley Ridge for the 2016-2017 school year. *Id.*

Defendant denies that Pressley Ridge sent it monthly invoices for educational and residential services and denies that it failed to timely pay. *Id.* at ¶31. Defendant also denies that after correspondence from Pressley Ridge regarding its outstanding balance, it remitted approximately $77,910.45 to Pressley Ridge for the period August 3, 2016 through September 30, 2016. *Id.*

Defendant "states that it remitted all payments to Pressley Ridge for which it is responsible." *Id.* at ¶s 32, 45. Defendant also "states that it has not issued payment to Pressley Ridge for the period October 1, 2016 to the present but has remitted all payments to Pressley Ridge for which it is responsible." *Id.*, *PageID* #s 221-22, ¶s 53, 58.

Defendant admits that it corresponded with Pressley Ridge about J.D. between September 22, 2016 and February 21, 2017. *Id.*, *PageID* #220, ¶38. Defendant denies that these correspondences concerned J.D.'s progress toward his IEP goals. *Id.*

Defendant "admits that it corresponded with Pressley Ridge and government agencies between September 22, 2016 and November 18, 2016 in an attempt to facilitate funding for the education and related services J.D. received at Pressley Ridge even though the District was not obligated to pay for those services when it was no longer J.D.'s district of residence." *Id.* at ¶39.

Defendant "states that the Board [of Education] initiated actions in the Juvenile Division of the Champaign County Court of Common Pleas in December 2016 and February 2017 contesting the validity of alleged grandparent powers of attorney executed by

J.D.'s parents." *Id*. at ¶36.

## III.  Motions for Judgment on the Pleadings

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is evaluated under the same standards that apply to a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). As stated above, *supra*, §II, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true...." *Tucker*, 539 F.3d at 549. "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible. *Fritz*, 592 F.3d at 722 (quoting, in part, *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009). "However, 'a legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Id*. (citations omitted).

"'A motion brought pursuant to Rule 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (citations omitted). Stated another way, a Rule 12(c) motion "may be granted only if the moving party is … clearly entitled to judgment.'" *Id*. This occurs "if there is an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff

does not have a claim." *Mayrides v. Delaware County Comm'rs*, 666 F.Supp.2d 861, 866 (S.D. Ohio 2009) (Marbley, D.J.) (citation omitted

The primary focus of a Rule 12(c) analysis is on the allegations in the pleadings—namely, the complaint, the answer, and any written instruments attached as exhibits. *Roe v. Amazon.com*, 170 F.Supp.3d 1028, 1032 (S.D. Ohio 2016) (Rose, D.J.) (citations omitted). With the pleadings in the forefront, a court analyzing a Rule 12(c) motion may also consider "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account.'" *Id.* (citations omitted). "In addition, a court may consider exhibits attached to a motion for judgment on the pleadings 'so long as they are referred to in the Complaint and are central to the claims contained therein.'" *Id.* (quoting, in part, *Bassett v. Nat'l Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir. 2008)).

## IV.    Discussion

### A.    <u>Breach of Contract</u>

There is no dispute in the present case that the parties entered into an enforceable contract concerning the placement of J.D. at Pressley Ridge during the 2015-2016 extended school year.  There is likewise no dispute that each party performed its contractually imposed duties without breach during the 2015-2016 extended school year.  The parties' disputes concerning the 2016-2017 extended school year are another matter.

The Board contends that it is entitled to judgment on the pleadings as to Pressley Ridge's breach-of-contract claim because no written or oral contract existed between them concerning J.D.'s placement at Pressley Ridge for the 2016-2017 school year.  The Board

maintains that under Ohio law, Ohio Rev. Code §3313.33, no contract can exist with the Board unless it authorized it. According to the Board, Pressley Ridge's Amended Complaint fails to allege that the Board ratified any agreement with Pressley Ridge for the provision of services to J.D. during the 2016-2017 school year. The Board also argues that Pressley Ridge fails to allege the parties had a meeting of the minds as to the existence of an agreement or what the agreement might have specifically contained with regard to term, price, or length.

Ohio law[5] provides, "No contract shall be binding upon any board [of education] unless it is made or authorized at a regular or special meeting of such board." Ohio Rev. Code §3313.33(B). Additionally, "parties cannot enter into an enforceable contract unless they come to a meeting of the minds on the essential terms of the contract." *Advance Sign Group, LLC v. Optec Displays, Inc*., 722 F.3d 778, 784 (6th Cir. 2013) (citation omitted).

> The concepts of "mutual assent" and "meeting of the minds" have been used interchangeably in Ohio case law. Manifestation of mutual assent requires that each party make a promise or begin to render performance. "The 'manifestation of assent may be made wholly or partly by written or spoken words, or by other acts or the failure to act.' " *Id.* (quoting *Precision Concepts Corp.,* 2000 WL 1015114, at *2). "Whether there has been a manifestation of mutual assent and/or a meeting of the minds is a question of fact to be determined from all the relevant facts and circumstances." *Id.* (citing *Matusoff & Assocs. v. Kuhlman,* No. 98AP–1405, 2000 WL 192449, at *3 (Ohio Ct. App. Sept. 28, 1999)).

*Advance Sign Group, LLC v. Optec Displays, Inc*., 722 F.3d 778, 784 (6th Cir. 2013).

---

[5] The parties agree that Ohio law applies in the present case. (Doc. #23, *PageID* #237; Doc. #25, *PageID* #264).

Contrary to Defendant's argument, the Amended Complaint asserts sufficient facts, when taken as true, to plausibly claim that the Board authorized a contract during a regular board meeting for continued placement of J.D. at Pressley Ridge during the 2016-2017 extended school year. To be sure, the Amended Complaint does not specifically allege that during a regular meeting on such-and-such date the Board made or authorized the contract with Pressley Ridge for J.D.'s placement and funding during the 2016-2017 school year. Yet, it says enough to raise a reasonable inference—at this, the pleading stage of the litigation—that the Board did so.

The pertinent factual allegations begin with the existence of the Board and Pressley Ridge's contract concerning J.D.'s placement and funding during the 2015-2016 school year. Although the 2015-2016 written contract itself does not show that the parties entered into a contract for the 2016-2017 school year, it is a significant part of circumstances in which the parties found themselves when their 2015-2016 contract concerning J.D.'s placement expired, in or near August 2016. At a minimum, it is reasonable to infer from the parties' 2015-2016 contract, plus their interactions starting in August 2016, that the Board knew about J.D.'s need for "a full-time one-on-one aide during all waking hours."[6] (Doc. #21, *PageID* #185). The Board also knew it was paying Pressley Ridge to provide services to J.D. throughout the 2015-2016 school year.

The Board's alleged conduct starting at the IEP meeting on August 3, 2016 shows its

---

[6] Defendant denies that J.D. required this level of care, but Pressley Ridge's allegation must be accepted as true when evaluating Defendant's Rule 12(c) Motion. *Tucker*, 539 F.3d at 549.

intent at that time to enter into another similar contract with Pressley Ridge for the 2016-2017 school year. This is seen in the Amended Complaint's allegation that in August 2016, the Board supported J.D.'s continued placement at Pressley Ridge for the extended 2016-2017 school year as part of his IEP Team. Defendant's Answer, moreover, contains sufficient information to create a reasonable inference that the Board agreed to continue his placement at Pressley Ridge. Such agreement was not only consistent with the parties' previous 2015-2016 written contract, it provides a basis for reasonably concluding that the Board agreed to pay Pressley Ridge for its services to J.D. during the 2016-2017 school year.

Defendant's Answer also admits the Amended Complaint's allegation that the Board "participated in J.D.'s IEP review on August 3, 2106, as a member of J.D.'s IEP Team…, as J.D.'s school district of residence[,] and as a required member of J.D.'s IEP Team." *Id.*, *PageID* #218, ¶22. Defendant further "admits that on or about August 3, 2016, J.D.'s IEP team agreed to continue his placement at Pressley Ridge." *Id.* at ¶27. From these facts, a syllogism arises: The Board was a member of J.D.'s IEP Team; on August 3, 2016, the IEP Team agreed to continue J.D.'s placement at Pressley Ridge; therefore, the Board (as an IEP Team member) agreed to continue J.D.'s placement at Pressley Ridge. And, again, such agreement carried with it Defendant's obligation to pay for J.D.'s ongoing placement at Pressley Ridge. The fact, moreover, that the Board attended the IEP team meeting reveals that it knew about the contents of J.D.'s IEP, including the agreed-upon plan to continue J.D.'s placement and education at Pressley Ridge.

This, of course, is not the same as saying that the Board authorized a 2016-2017

contract with Pressley Ridge during a regular meeting. It is also not to absurdly say that the Board members themselves attended the IEP meeting in August 2016, although the Amended Complaint read literally suggests it. *See* Doc. #22, *PageID* #187, ¶26 ("Defendant [the Board] participated in J.D.'s IEP review on August 3, 2016…."). Yet, it is reasonable to infer from the pleadings that the Board authorized the 2016-2017 contract with Pressley Ridge during a regular meeting. If it did not, then the individuals who engaged with Pressley Ridge, presumably the School District's Treasurer and\or Superintendent,[7] were exceeding their authority. Drawing upon experience and common sense, this is not something such professionals would ordinarily do. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its experience and common sense."). Graham Local School District Bylaws & Policies tend to confirm that the Superintendent was not exceeding the authority given to him by the Board. *See* www.neola.com/graham-oh/search/policies/po6232.htm) ("The Superintendent shall be authorized to proceed with making financial commitments, purchases, and other expenditures within the limits provided in the appropriations, limitations stated in Board policies, and within the legal authority expressed in State statutes.).

The existence of the parties' meeting of the minds as to the terms of the contract arises from the Amended Complaint's allegation that the Board began to pay for the services Pressley Ridge provided to J.D. starting in August 2016. Although the payment was not

---

[7] They, after all, executed the parties' contract for the 2015-2016 school year. *See* Doc. #21, *PageID* #198.

made until November 2016, this does not void the Amended Complaint's allegation that the Board paid Pressley Ridge a significant amount—$77,910.45—for the educational and residential services J.D. received at Pressley Ridge from August 3, 2016 through and including September 30, 2016. It is difficult to see how such a large payment could have or would have been made to a private school located in Pennsylvania without the parties' meeting of the minds over the terms of the contract between them, unless it is assumed that the Board was completely out of touch with J.D.'s placement at Pressley Ridge and its resulting financial obligations. Additionally, it is the set of alleged facts (reviewed above and *supra,* §II) and the reasonable inferences arising from them that reveal the plausibility in Pressley Ridge's breach-of-contract claim.

The existence of the parties' meeting of the minds, and the resulting contract, is bolstered by the alleged fact that "between September 22, 2016 and at least November 18, 2016, Defendant continued to correspond with Pressley Ridge and government agencies regarding Defendant's continued obligation to bear the cost of J.D.'s placement at Pressley Ridge." (Doc. #21, *PageID* #190, ¶55). Again drawing upon experience and common sense, it is reasonable to observe that Defendant would not have engaged in such activities if it had not authorized payment to Pressley Ridge for J.D.'s placement during the 2016-2017 school year. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its experience and common sense.").

Defendant points out that the agreed-upon IEP was not a contract and does not show that the parties entered into an enforceable contract concerning J.D.'s placement at Pressley

Ridge during the 2016-2017 school year. Yet, assuming that the IEP is not an enforceable contract does not help Defendant because the IEP itself is not the contract Pressley Ridge seeks to enforce. It is the parties' enforceable, valid agreement concerning J.D.'s placement at Pressley Ridge during the 2016-2017 school year that is at issue.

Defendant further contends that Pressley Ridge's attempt to create an enforceable contract based on its own alleged actions and the actions of the alleged representatives of the School District's employees must fail. Citing *Walker v. Lockland City Sch. Dist. Bd. Of Educ.*, 69 Ohio App.2d 27, 429 N.E.2d 1179 (1980), Defendant reasons, "neither an agent of the board nor a member of the school board can bind a board of education to a contract, even if the agent of the board is the superintendent." (Doc. #24, *PageID* #253). *Walker*, however, involved circumstances different from those in the present case. In *Walker*, a superintendent's representations to parents effectively allowed two students from outside the school district to become tuition-paying students. But, the school board had not enter into a contract with the parents during a board meeting. Because of this, the Ohio Court of Appeals held that the requirements of Ohio Rev. Code §3313.33 were not met and no contract existed between the school board and the parents even if the superintendent made representations to the parents based on conversations with individual board members. *Id*. at 28-29.

In contrast to *Walker*, Pressley Ridge's Amended Complaint, sets forth sufficient facts, when taken as true, to show the board authorized one or more employees of the school district to contract with Pressley Ridge concerning J.D.'s placement at Pressley Ridge for the 2016-2017 school year.

Defendant contends that the minutes of the Board's meetings do not mention Pressley Ridge and, as a result, the minutes show that the Board never authorized the contract with Pressley Ridge for the 2016-2017 school year. Defendant raises this argument in response to Pressley Ridge's reliance on the minutes of the Board meetings in an attempt to show that the parties' contract for the 2016-2017 school year.

The parties' contentions concerning the significance of the Board's minutes are premature. The problem with consideration of the Board's minutes at this stage of the case is that the minutes are not the type of public record or other document that the Court may consider at the pleadings stage of the case. This is seen in the parties' disagreement about the meaning and significance of those records. Pressley Ridge thinks the minutes show the Board's approval of the contract with Pressley Ridge through its appropriations; Defendant thinks the minutes do no such thing. When the substance of the information contained in public records appears controverted in a Rule 12(c) proceeding, the evidence attached to the pleadings or submitted by the parties should not draw the court's focus away from the parties' pleadings. *See Amazon.com*, 170 F.Supp.3d at 1032 (The primary focus of a Rule 12(c) analysis is on the allegations in the pleadings). There is, moreover, no indication of who took the meeting minutes or how he or she determined what information to document in, or leave out of, the minutes. And, it would seem that testimony by those present during the meetings might shed light on whether the Board authorized the 2016-2017 contract with Pressley Ridge or funded J.D.'s placement at Pressley Ridge in its budgetary appropriations. Saying this much, however, begins to stray into summary-judgment, or perhaps even trial,

territory where the Board's meeting minutes or related testimony might be more appropriately presented and considered.

Pressley Ridge also points out that Graham Local waited more than fourteen months after agreeing to continue J.D.'s placement (in August 2016) to assert, for the first time, that the Board failed to approve the 2016-2017 agreement. The Superintendent's February 2017 letter omits mention of the alleged lack of Board approval. This is a somewhat odd circumstance, when viewed in Pressley Ridge's favor, because Defendant paid slightly more than $77,000 for J.D.'s placement at Pressley Ridge during August and September 2016. It is reasonable to infer that Defendant or its representatives would not have paid this amount unless it understood it had an ongoing contractual duty to do so. *Cf. Bishop v. Oakstone Academy*, 477 F.Supp.2d 876, 887 (S.D. Ohio 2007) (*Bishop I*) (Marbley, D.J.) (disabled student's tuition paid by school district to private school can constitute consideration— "Oakstone is not providing its services for free.").

Accordingly, Defendant as not demonstrated that it is "clearly entitled to judgment," *Tucker*, 539 F.3d at 549, on the pleadings in its favor on Pressley Ridge's breach-of-contract claim.

* * *

Pressley Ridge contends in its Rule 12(c) Motion that the August 3, 2016 IEP essentially renewed the parties' previous written 2015-2016 contract for the 2016-2017 school year. It further argues that under Ohio law, the IEP is evidence of an offer, acceptance, and consideration, and as a result, a contract between a school district and the private school at which the student is placed. To support this, Pressley Ridge first relies on

19

*Bishop I*, 477 F.Supp.2d at 886. *Bishop I*, however, did not hold that an IEP always constitutes an enforceable contract. Instead, the plaintiffs' allegations were sufficient in *Bishop* to avoid a Rule 12(b)(6) dismissal of their breach-of-contract claim. *See id.*

Pressley Ridge forges ahead to another *Bishop* case, *Bishop v. Children's Center for Developmental Enrichment,* No. 2:08cv766, 2011 WL 3443518, at *1 (S.D. Ohio Aug. 8, 2011) (*Bishop II*) (Frost, D.J.), in which a school district entered into a written contract with a private school for the placement of a disabled student during the 2005-2006 school year. *Id.* at *7. Judge Frost found in *Bishop II* that there parties had entered into the contract at issue. *Id.* at 9. The student's IEP did not establish the existence of the contract; the parties' separate written contract did. *Id.* at 7-9. In addition, Judge Frost referred to the IEP, not as a contract, but instead as part of his analysis of whether the parties' written contract was breached. *Id.* at *9-*12. Bishop *II*, therefore, fails to support Pressley Ridge's contention that IEPs are contracts under Ohio law.

Pressley Ridge tries again by relying on *Bishop III*, *Bishop v. Children's Center for Developmental* Enrichment, No. 2:08cv766, 2011 WL 5506105, at *10 (S.D. Ohio 2011) (Frost, D.J.), in which Judge Frost reconsidered and reaffirmed his holding in *Bishop II* that the parties had entered into an enforceable contract. 2011 WL 5506105, at *10. As a result, *Bishop III* does not support Pressley Ridge's contention that IEPs are contracts under Ohio law.[8]

---

[8] Pressley Ridge also misses the mark by citing the IDEA's requirement, imposed on school district or state agencies, to put an IEP into effect for each disabled student at the start of each school year. 20 U.S.C. §1414(d)(2)(A). This statute does not specify that an IEP is an enforceable contact, and it says nothing about state (or Ohio) contract law.

Pressley Ridge next refers to the "undisputed facts" as demonstrating that J.D.'s IEP included Pressley Ridge's offer to provide services to J.D., Defendant's acceptance of that offer, and consideration. Pressley Ridge also contends that Defendant failed to perform its contractual obligations through May 13, 2017. Yet, it remains to be seen whether the Board approved, in line with Ohio Rev. Code §3313.33, a contract during a regular meeting that resulted in J.D.'s IEP for 2016-2017 school year. There are, moreover, facts in dispute seen in the denials asserted by Defendant in its Answer.

Accordingly, Pressley Ridge has not demonstrated it is "clearly entitled to judgment," *Tucker*, 539 F.3d at 549, on the pleadings in its favor on its breach-of-contract claim.

### B.     Collections On An Account

Defendant contends that Pressley Ridge's claim for collections on an account fails because it is derivative of Pressley Ridge's insufficient breach-of-contract claim and because Pressley Ridge has not alleged facts sufficient to show it was a party to an enforceable contract. These contentions argument lacks merit in light of the Pressley Ridge's plausible breach-of-contract claim.

Pressley Ridge argues that it is entitled to judgment on its action-on-an-account claim. This claim, however, is dependent upon whether a contract existed between the parties. *See Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 604 (6th Cir. 2005). With that at issue in the pleadings, Pressley Ridge is not entitled to judgment on this claim.

### C.     Unjust Enrichment

Pressley Ridge advances a claim of unjust enrichment as an alternative to its breach-

of-contract claim. (Doc. #27, *PageID* #311). It asserts that Defendant has been unjustly

enriched in excess of $208,856.73 by its receipt and use of benefits Pressley Ridge

provided. Pressley Ridge explains:

> [T]o the extent that Graham Local alleges that hyper-technical defect(s)
> prevent the express agreement continuing Pressley Ridge's provision of
> educational and related services for the 2016-2017 school year from rising to
> the level of an enforceable contract, Pressley Ridge is nonetheless entitled to
> payment for the benefit conferred upon and accepted by Graham Local as a
> result of Graham Local's acknowledgement and part performance of its
> obligation.

(Doc. #27, *PageID* #313; *see* Doc. #21, *PageID* #s 194-95). It is worth pausing to note that

Pressley Ridge does not seek judgment on the pleading on its claim of unjust enrichment.

Unjust enrichment arises in Ohio upon proof of "(1) a benefit conferred by a plaintiff

upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the

benefit by the defendant under circumstances where it would be unjust to do so without

payment." *Gascho v. Global Fitness Holdings, LLC*, 863 F.Supp.2d 677, 699 (S.D. Ohio

2012) (Smith, D.J.) (citing *L & H Leasing Co. v. Dutton,* 82 Ohio App.3d 528, 612 N.E.2d

787, 791 (1992) (citing *Hambleton v. R.G. Barry Corp.,* 12 Ohio St.3d 179, 465 N.E.2d

1298 (1984)). "Unjust enrichment is an equitable doctrine to justify a quasi-contractual

remedy that operates in the absence of an express contract or a contract implied in fact to

prevent a party from retaining money or benefits that in justice and equity belong to

another." *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009)

(citations and emphasis omitted).

Defendant looks to Ohio Rev. Code §2744.01(F) and finds it is immune from

Pressley Ridge's unjust-enrichment claim due to its status as a political subdivision that

engages in a governmental function—the provision of public education.

Political subdivisions in Ohio are entitled to immunity described in Ohio Rev. Code §2744.02. Graham Local School District is a political subdivision that performs a governmental function in its provision of public education. *See Doe v. Marlington Local School Dist. Bd. of Ed.*, 122 Ohio St.3d 12, 15 (2009); *see also* Ohio Rev. Code §2744.01(B)(2)(c). In general, Ohio law grants immunity to such political subdivisions for injury, death, or loss to persons or property it allegedly caused by in connection with its exercise of a governmental function. *See* Ohio Rev. Code §2744.02(A)(1). Certain exceptions apply, one of which deprives a political subdivision of statutory immunity in a civil action that seeks damages "for contractual liability." Ohio Rev. Code. 2744.09(A); *see Duncan v. Cuyahoga Community College*, 970 N.E.2d 1092, 1097 (Ohio App. 2012) (citing §2744.09(A)). Consequently, statutory immunity does not shield Defendant from Pressley Ridge's breach-of-contract claim.

Pressley Ridge's claim for enrichment is a separate matter. The immunity statutes do not specifically except claims of unjust enrichment from the general immunity extended to political subdivisions. *See* Ohio Rev. Code §2744.09 (A)-(E); *see also* Ohio Rev. Code §2744.02(B). In addition, the contract-related statute in the present case—again, Ohio Rev. Code §3313.33(B)—ties the existence of an enforceable contract to school-board authorization during a regular meeting. This aspect of §3313.33(B) would become a nullity if Pressley Ridge's equitable claim of unjust enrichment is allowed to proceed. *Cf. Wuliger*, 567 F.3d at 799 (unjust enrichment operates in the absence of a contract); *see Schmitt v. Educational Serv. Ctr. Of Cuyahoga Cnty.*, 970 N.E.2d 1187 (Ohio App. 2012) ("political

subdivisions cannot be made liable on theories of implied or quasi contract"); *cf. also*

*Franks v. Village of Bolivar*, No. 5:11cv701, 2011 WL 5838209, at *5 (N.D.Ohio,2011)

(Lioi, D.J.) ("A village is a municipal corporation that cannot be bound by a contract 'unless

the agreement is formally ratified through proper channels. As a result, a claim may not be

sustained against a municipal corporation upon theories of implied or quasi-contract….'")

(citation omitted)); *City of Cleveland Heights v. City of Cleveland*, No. 79167, 2001 WL

1400015, at *4 (Ohio App. 2001) (same).

Accordingly, Defendant is entitled to judgment on the pleadings in its favor on

Pressley Ridge's claim of unjust enrichment.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Pressley Ridge's Motion for Judgment on the Pleadings on Count I and II of the Amended Complaint (Doc. #23) be denied; and

2.  Defendant's Motion for Judgment on the Pleadings (Doc. #24) be granted on Count III (unjust enrichment) and denied on Counts I and II of Pressley Ridge's Amended Complaint.


May 21, 2018                                      *s/Sharon L. Ovington*
                                                  Sharon L. Ovington
                                                  United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).